**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-5136**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

         v.

AMY JOYELL HICKS,

              Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.   James P. Jones, District Judge.  (1:08-cr-00002-jpj-pms-2)

Submitted:  July 21, 2011          Decided:  September 6, 2011

Before WILKINSON, NIEMEYER and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, Nancy C. Dickenson, Assistant Federal Public Defender, Brian J. Beck, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, Christine Madeleine Lee, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, A. Benjamin Spencer, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is a case about double jeopardy for a defendant who was tried twice for health care fraud by falsely billing ambulance services to Medicare. The defendant, Amy Joyell Hicks, was tried for violating 18 U.S.C. § 1347 (West 2000) under a fourteen-count indictment. The jury acquitted on thirteen of the fourteen counts – including conspiracy – but hung as to the first count, which was the underlying substantive crime. Hicks was subsequently retried on the first count and convicted. She argued her conviction violated the double jeopardy clause, and, more specifically, contravened Ashe v. Swenson, 397 U.S. 436 (1970). We disagree and therefore affirm her conviction.

I.

Hicks worked from October 2004, until March 2006, at an ambulance service company known as Angel Care that provided transportation to individuals in Southwest Virginia. In November 2006, Hicks returned to work at Angel Care in the capacity of an office manager, which included the responsibility of writing "run sheets" or "trip sheets" documenting costs to Medicare and private insurance companies for payment. Medicare's policy regarding reimbursement for transportation is strict: if a patient is "ambulatory" – meaning he or she is

2

able to walk – then Medicare will not cover the costs of riding in an ambulance. In order to be covered the patient must be "non-ambulatory" or "bedridden." In the latter case, the patient must ride on a stretcher in the back of the ambulance, and may not sit up front with the driver.

The government alleges that Hicks falsified information with respect to four Angel Care patients who were regularly transported to their dialysis appointments. Count One of the indictment alleges that during the period of December 2004, and September 2007, Hicks knowingly and willfully, both as a principal and as an aider and abettor, executed or attempted to execute a scheme of false or fraudulent pretenses, representations, and promises in connection with the delivery and payment of health care benefits. Unlike other counts in the indictment – for example Counts Three through Eight which deal with wire fraud in violation of 18 U.S.C. § 1343 (West 2000 & Supp. 2009) – Count One of the indictment does not allege specific transactions or dates. Nonetheless, it incorporates by reference an introductory fact section that discusses the fact that the four patients discussed above did not meet the requirements for being "bedridden" but were nevertheless transported in an ambulance that was billed to Medicare. The fact section of the indictment does not allege particular dates, but does contain a time period identical to the window alleged

3

in Count One. Count Two of the Indictment alleges that Hicks entered into a conspiracy with Darrell Jack Kiser, who owned and operated Angel Care, and others relating to the "trip sheets" submitted to Medicare. Counts Nine through Fourteen of the Indictment allege that she made or used a false material document in violation of 18 U.S.C. § 1001(a) (West 2000 & Supp. 2009).

After trial, a jury acquitted Hicks of thirteen of the fourteen counts of the indictment, including conspiracy and the substantive crime of wire fraud with respect to the specific transactions referenced in Counts Three through Eight. The jury hung on Count One. The judge declared a mistrial with respect to that count. The government subsequently retried Hicks with respect to Count One and obtained a conviction. Hicks moved to dismiss on the grounds that the subsequent conviction violated the double jeopardy clause because the same facts that underlay the acquittal for Counts Two through Fourteen underlay Count One and therefore were collateral estopped. Specifically, she argued that health care fraud is inherently collaborative and therefore was duplicative with the conspiracy count. Furthermore, the count was premised solely – according to Hicks – on the acts of faxing that underlay the wire fraud acquittal. The basic thrust of her argument was that all counts involved

4

the same nexus of facts and thus the jury's verdict was inexplicable.

The court held a hearing on Hick's motion and subsequently issued an opinion denying the defendant's motion. This appeal followed. On appeal, Hicks not only argues that her conviction violates the double jeopardy clause, but also, that the district court erred in calculating financial loss and restitution and that the district court erred in imposing a Guidelines Sentence.

## II.

The parties agree that this case is controlled by <u>Ashe</u> – which holds that the government may not re-litigate any issue necessarily decided by a jury's acquittal in a prior trial – and <u>United States v. Fiel</u>, 35 F.3d 997 (4th Cir. 1994), which lays out a five-factor test governing the applicability of collateral estoppel. In <u>Fiel</u>, we held that the factors included "(1) whether the issue in question is identical to the previous issue, (2) whether it was actually determined in the prior adjudication, (3) whether it was necessarily decided in that proceeding, (4) whether the resulting judgment settling the issue was final and valid, and (5) whether the parties had a full and fair opportunity to litigate the issue in the prior proceeding." <u>Id.</u> at 1006. We further explained that "[i]n

5

order for the determination of an issue to be given preclusive effect, it must have been necessary to a judgment." Id.

It is axiomatic that conspiracy and the substantive crime that underlie it are not identical and do not share the same elements. Thus, an acquittal on one does not necessarily carry over to an acquittal on the other. Hick's argument that health care fraud is inherently collaborative flies in the face of myriad convictions – for example in drug cases – where a defendant is exonerated of one but inculpated on another. It seems possible that while there was never an "agreement" between employees to cook the books concerning Medicare billing, the employees might have independently arrived at the decision to falsify applications so that the business would not go under. Furthermore, the evidence submitted to the jury did not directly link Hicks to the creation or submission of the fraudulent trip sheets for the dates in question.

Further, while Hicks was acquitted of the allegations in Counts Three through Fourteen as to the specific dates and transactions, the government still produced evidence that would allow a reasonable jury to conclude that during the entire three-year period Hicks did in fact commit health care fraud. For example, Angel Care employees Nutter and Tomes testified that Hicks had faxed "rubber stamped" trip sheet Medicare payments and that she had transported patients in her own car in

the front seat, rather than in an ambulance on a stretcher. Other patients testified that they were often transported in an ambulance, even though they could walk. Count One of the indictment does not allege specific dates, contrary to Hick's argument that it is specific. Rather, it alleges fraud over a general period. Thus, her conviction was not barred by double jeopardy.

## III.

Hicks next argues that the district court erred in calculating loss restitution. We disagree and affirm the judgment of the district court. Hicks argues that "the billings were 50% accurate." (Appellants' Br. at 24.). This was because on certain occasions the patients were in fact non-ambulatory due to renal failure and hemorrhaging. However, it was within the discretion of the district court not to credit this testimony, especially given evidence that patients were wheelchair bound, meaning they could be transported in a wheelchair van, and did not necessarily require an ambulance. The government has thus carried its burden of proof with respect to this issue.

IV.

Hick's final argument is that the sentence imposed under the Guidelines was unreasonable under 18 U.S.C. § 3355. We disagree and affirm because it was within the trial court's discretion to impose.

V.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.